May it please the court, I'm here representing Shanita Johnson. She is requesting that this course reverse, remand, and reinstate her claims based on the Fourth Amendment violations that occurred against her based on malicious prosecution. The claims were dismissed by the lower court based on under 12b6 for failure to state a claim. We're asking the court to also, if it's inclined to remand the case, back to the lower court, allow for a amended complaint under Rule 15a since she would be able to show that the would not be futile if the amendment was allowed. So going to the Fourth Amendment claim here, as the court has just recognized, there was a Rule 28j letter filed and it included the Thompson v. Clark case that was also in this case. On the facts, and I will remind the court briefly on the facts in Thompson v. Clark, Mr. Thompson, he opened the door to let inbound police officers and paramedics at the door. It was because of his sister-in-law having a mental illness. She believed that he may have sexually assaulted his newborn child, and so the child ended up going to the hospital with the paramedics. They were trying to do their due diligence to make sure there was not actually any type of sexual assault or any type of abuse going on with the newborn baby, but more than that, Mr. Thompson was taken and arrested by the police based on those allegations. He spent 36 hours in custody after that during that time that the newborn child was being evaluated by the hospital and they determined that this was nothing, no type of abuse. It was a diaper rash. Now turning to further on that case, when he was released, he's released on bond conditions, but although he was released on his own cognizance. Now I would like to compare some of those facts to this case and how it is analogous. Ms. Johnson also opened the door to police officers for a welfare check relating to somebody calling in saying they saw a black male and there needs to be a welfare check. She didn't know what was going on, but she understood the black male, she could only conclude, would be her brother who was in the home with her. She opened the door, left the door open, as the police officer stood outside of the threshold of the door. With that, her brother came down outside to see what the officers needed from him. They quickly grabbed him, threw him to the ground, handcuffed him on his stomach, while Ms. Johnson decided this would be a good time for the police to come in and do their due diligence to make sure there was no type of sexual assault or any type of abuse going on with the newborn baby, but more than that, Mr. Thompson was taken and arrested by the police based on those allegations. Now turning to further on that case, when he was released on bond conditions. Ms. Johnson also opened the door to police officers for a welfare check relating to somebody calling in saying they saw a black male and there needs to be a welfare check. She didn't know what was going on. She opened the door, left the door open, as the police officers were taking the time to record. There is a video of this whole incident. So she was recording the incident, the door remained open, the officers remained outside of the door at all times until they noticed that Ms. Johnson was actually recording. She was inside the home. They were all the other parties, including her brother, were outside of the home. The officers recognized that she was recording them and told her to drop the camera or some to that effect, put the camera down or stop recording some to that effect, and she objected and said, I have the right to record in my home. And the officers then breached the threshold, came in, grabbed her, grabbed her phone, violently and aggressively threw her to the floor in her home, handcuffed her, and it was so, the handcuffing was so violent that she ended up with a broken arm as a result. She was taken into custody based on, excuse me, she was taken into custody based on the allegation that she, with criminal negligence, refused to allow officers into the home, into the residence. She refused to lay on the ground, and she did so with intent and other allegations in the affidavit that the officers provided to the court. With that, Ms. Johnson was taken to the Harris County Jail, where she remained for about 24 hours. She was given a $100 bond. We're pretty familiar with the facts, having looked at the briefs, but this case was dismissed on limitations, so you need to address that. Okay, and as I was going into the analogy of the two cases, that case also dealt with the limitations issue, and that's the Thompson v. Clark case. It had to do with when the actual accrual date of the limitations would occur in a case like these two cases. And the accrual date is when there is a dismissal in the favor of the criminal defendant. In this case, the dismissal took place on December the 12th, and I do acknowledge that I put December 19th by mistake, but the case was also filed timely on December the 13th, which was a Monday, the day after the 12th. What was Judge Hughes' mistake in that analysis, in your opinion? Was it that he didn't understand the accrual date, the Sunday-Monday problem, or that he only imposed a one-year time limit? So according to his order, that part is not really 100% clear, but he stated that based on the claims alleged, that this was a Fourth Amendment violation based on wrongful, excuse me, the false imprisonment. And there was not any pleading relating to the Fourth Amendment based on malicious prosecution. There was nothing in the pleading that stated or alleged that there was no probable cause for the arrest. And therefore, the statute of limitations had run, and the accrual date was the day of the actual arrest. So your claim – you think that probably the misapprehension was putting a malicious prosecution accrual date at the date that the incident occurred as opposed to the date that the prosecution was dismissed? Correct, yes. Yes, that is our belief. And he also included a finding that there was not a – excuse me, even if it wasn't untimely, that the claims were not adequately pled. Okay. And on that, would you be able to point to where in the complaint you alleged malice or – and or? I'll give you three things you can point to. One is malice. Two is the details of any false allegations you say the arresting officer defendants gave to the prosecutors that led to the indictment. And the last one would be did you allege any details as to how these officers, the defendant officers, participated in the charging decision? It would seem to me that's what he might have thought was deficiently pled, any of those three things. That is not in the order, but I can say that – It's not in the complaint? Or it's not in his order? It's not in his order. But in the complaint, as far as what you're concerned about, Judge Higginson, is the malice element. I believe that that's met by the allegations that they came into her home and grabbed her, threw her to the ground so violently, aggressively, that shows, that indicates malice just on its face. But more than that, the court has found that in actually Thompson v. Clark that malice can be inferred based on the arrest without probable cause, that that meets the malice element in the case. So under those two facts, I would say, that are outlined in the actual live complaint would show the malice element. As far as the false allegations, that is also outlined in the complaint, and I could probably get that for you when I come back up, the exact record location number. And so what he's outlined in his order does not line up with – But the third point, you would say, again, it depends on an inference, or you did allege that these officers participated in the charges? Well, yes. There was an affidavit – oh, I'm sorry if I alleged that. They did – there is an allegation that based on their statements to the district attorney that the claims went forward. So that would indicate a participation in the actual prosecution. But also I would like to point out that every moment that she had to continue to go to court, and they didn't tell the truth, and they didn't share with the district attorney what the true facts are, including providing a body cam so that the district attorney can actually see for herself or himself what actually went on, shows that – and it could have stopped the prosecution at any point as soon as they were able to see that. But it lingered on until December for four months as a result of their failure to provide the true facts, which – that there was no probable cause for the arrest. And as far as the supervisory claims, we are – I'm also alleging that. And the supervisory claims as it relates to Harris County and Constable May Walker, it is our position that these officers, had they been adequately trained and supervised, would not have violated Mrs. Johnson's constitutional rights. And the failure to adequately train them was a foreseeable consequence. And when I say train them, train them, and it's alleged in the complaint, on the limits of probable cause – of constitutional limits of probable cause and what actually constitutes probable cause. If they had that simple training that it requires probable cause in order to arrest somebody for interference with public duties, you can't make up stories in order to gain that charge. And further, the constitutional limits on arresting a person for recording under their Fourth Amendment right, entering a home. If – had they been adequately trained, this could have been avoided. And if they were trained and this wasn't avoided, discipline should have followed. And the fact that there was no discipline that followed with these officers also would support a failure to train and failure to supervise allegation. And that would be under – that would be under the Brown v. – I'm sorry, the Brown v. Bryan County case. So I'm going to – unless anybody has any further questions, I'm going to step away. Yes, you've saved some time for a moment. Thank you, Ms. Lewis. Ms. Jones? Good morning, Your Honors. May it please the Court. There's no interpretation that this Court should adopt that would bring appellant's claims within the statute of limitations. And in addition to that, appellant's pleadings in and of itself have failed to state a claim upon which relief can be granted. I did want to go back to the last question that I believe Jeff Shigginson may have asked appellant, showing that each defendant participated in certain – each defendant participated in certain elements of the case. And I did want to point out specifically that in the record at 213 – excuse me, 212 to 213, paragraph 26, she specifically states that one officer took her arm, jumped on her, handcuffed her, and escorted her to the constable cruiser. We don't know what officer she speaks of. There's no specificity determining which defendant she's speaking to. And as the Court knows and understands, she has to plead which person did what activity. In addition to that, if we look at the record at 216 and 217, paragraph 50, it says she calls the officers Officer Doe 1 and Officer Doe 2. We can't distinguish from her pleading who did what and what action was done by these alleged defendants or these alleged officers who she doesn't necessarily name. Now, as far as the Fourth Amendment claim, so in this instance, the Fourth Amendment malicious prosecution claim, in our opinion it fails because the underlying constitutional violations that she alleges were barred by the statute of limitations. So in her reply brief, appellant states that she abandons claims of excessive force and abandons any claims of First Amendment. Now, what's left is just the unlawful arrest as well as the false imprisonment that could possibly support a malicious prosecution claim. Now, I think appellant is – she is inappropriately conflating two distinct causes of action with the false arrest, believing that the date of accrual is when the dismissal – is the dismissal of the criminal case. And in appellant's brief, she does point to a case, Winfrey v. Rogers from this court. However, that is not similar to the case at hand because in that case there was an underlying constitutional violation found that would support a Fourth Amendment claim. Additionally, that court in Winfrey stated that that claim was more similar to a malicious prosecution claim because the complainant was arrested through wrongful institution of legal process, meaning that there was an unlawful arrest pursuant to a warrant. And that is not what happened in this case. This case is more similar to the Wallace v. Cato case where there was no – no arrest warrant was there, and it was detention without legal process. That's what they stated. So in this instance, all those – all the claims accrued except for the malicious prosecution on August 10, 2019. On August 10, 2019, appellant was arrested, brought in custody, given a bond, released from custody, and then given a date to return to court for her charge of interference with public duties. So that would be the date that the claim accrued because detention without legal process at that point had ended, if I'm making sense. So this is supported, I believe, in the court's opinion in Moon v. City of El Paso where it held that holding false imprisonment – well, excuse me, release – the release date of a false imprisonment claim was the accrual date. Just so I can be clear, because you're right, she reduced her claims in the reply brief just to the malicious prosecution. As to that one, you're defending the district court's ruling that it, too, was time barred, but you're defending it not saying Texas's one-year malicious prosecution statute applies. You're defending the ruling saying there was no properly pled malicious prosecution. All we really have is a false arrest, but don't let me put words in your mouth. Is that – no, no, no, there's no apology. I just – I tend to do that. So what is your – in terms of if we accept that all claims are barred, how – I'm not quite sure I understand the logic as to the malicious prosecution claim. Okay, so the thought process is in this instance that there – so there is – at this time there was a specific way in which you could plead a Fourth Amendment malicious prosecution claim, and the way you could do that was to have an underlying constitutional violation that supports that malicious prosecution claim. First, appellant doesn't have that in this instance because those underlying claims of false arrest or false imprisonment and unlawful arrest are time barred by statute of limitation. Therefore, there would be no plausible claim at all for a Fourth Amendment malicious prosecution claim at that time. Additionally – Let's stop there. Our case law on malicious prosecution, 1983, it doesn't require a false arrest. It requires no probable cause, and then proceedings were instituted against her, and then they weren't eventually – they didn't end in her favor until the date she described. Yes. So I'm not sure I'm following what element you're saying is missing. Well, what I'm saying is in all the other cases we see, such as the Winfrey v. Rogers case, there was – the court accepted from the lower court that there was some showing of underlying constitutional violation there. So what I'm saying – An arrest and a prosecution without probable cause. That's the Fourth Amendment violation. Yes. And she has alleged that. She has, but one of the issues that is cited in Wallace v. Cato talks about what that timing is for detention. And this case is different from the other cases in that in Wallace v. Cato and Winfrey v. Rogers, everyone had been in custody up until the date of their dismissal or been in custody up until the date of their trial where they were acquitted. In this instance, literally the day she was arrested, she was released. She was given a bond. She was told to come back. At that point when she was released, the detention ended, and now she was no longer – it was no longer detention without legal process when she was released because her case had started already. She was starting to go to court after that point, if that makes sense. And so our point is here the only plausible claim she could have had at this time for a malicious prosecution would have been a Texas tort malicious prosecution claim, which has that one-year statute limitation, which she missed. So that's where that comes into play, Your Honor. And so – Let's say it isn't time-barred. Did the district court actually rule anywhere in its order that it wasn't properly pled, or is that just an independent basis? And if so, how would you spell that out? I believe in the order that the court stated that the appellant did not plead sufficient facts to support some of her claims. She's saying, well, it's a proper inference because the complaint describes the violence with which she was arrested. All of her – honestly, Your Honor, all of her appellant's pleadings, they're conclusory. So when we go through it – for example, failure to train for Constable Walker. When she alleges that, she generally states in the record at 218, generally stating that the training was deficient and it could have been better, and if it was better, this wouldn't have happened. And that is – that's not enough. You have to allege with specificity how particular training is deficient. She didn't do that. And in addition to that, she has to show deliberate indifference or facts that support deliberate indifference. I don't believe she's shown that. It requires proof that a policymaker disregarded a known or obvious consequence to the execution of a government's policy. She has not explicitly stated a policy. She has not given us a widespread custom, even, or practice that would be deemed a policy. So – This is as to Harris County. This is – excuse me. This is as to Harris County and May Walker. I'm sorry. I kind of conflated. But as far as May Walker with the supervisory issues, as a matter of law, because under – as a matter of law, it fails. Because under 1983, supervisory officials, they're not liable for the conduct of their subordinates under theories of vicarious liability. And in this instance, in appellant's amended complaint, she failed to plead any facts whatsoever that Constable Walker had any personal involvement in any alleged constitutional violations at issue. Failed to plead any facts that Constable Walker promulgated any type of unconstitutional policy. And as far as Harris County is concerned, they fail. And I think it's record site at 216 paragraph 49. But, again, Harris County, there's no vicarious liability for the deputy's actions for Harris County. She has not pled a sufficient Monell claim. Policymaker, nope. An official policy or widespread custom, not there. Her saying there's a widespread custom, that is not enough. And then there has to be violations of constitutional rights whose moving force is the policy or practice. All of her statements in that regard at 216 in the record, paragraph 49, very conclusory regarding that. And similar arguments regarding Harris County and May Walker with the training. She failed to identify any specific deficiencies in training. Failed to allege facts that linked the purported inadequate training to her alleged injuries. Failed to allege facts to establish an official policy or custom regarding that as well. And as far as the failure to discipline or any ratification claims, she's abandoned that as well in her pleadings. Regarding the motion to leave, it's an abuse of discretion standard. And the court did not abuse discretion in this case. Appellant failed to plead any of the necessary elements for a motion for leave. And she failed to explain to the court where her pleading would not be futile. And so in the court's opinion, because the statute of limitations had run, he believed obviously any changes or amendments would be futile. She made no showing of why it would not be. And still we don't have any information really of how amending it would fully change this scope. And I know that appellant briefly touches on claims of tolling. But if we look at her tolling claims, which are. Well, if we look at appellant's tolling claims, we see that they're vague. It's at site, I believe, 219 in the record. And I'd say it's fair to say the least. It just generally states that some defendant, we don't know which one, may have been out of the state, we're not sure when, and gives no facts to support that. It's just a conclusive restatement saying that. And this court, I believe in Moon versus El Paso City, City of El Paso, they had a similar analysis and they said, you know, you have to give some type of factual basis for this tolling. And similarly to that case here, we don't have that factual basis. Well, I do want to acknowledge briefly that there was an appellant did mention this. There was a law change. Thompson v. Clark in 2022. But in our opinion, that would not change the analysis here, simply because at the time of. At the time the Bush prosecution accrued and at the time that the case was filed. Yeah, at the time the case was filed and at the time this was this was not the law. The law was something else. It was. Because the versus for Gaza. So even with the law change, it shouldn't be applied retroactively. It's our position that it's a procedural change. It's not a new right that's been recognized. In any way, shape or form, there was always a Fourth Amendment malicious prosecution claim that could be had. All this did was change the avenue in which you were able to bring it forth to the court. But with that, I will be done. Thank you. Thank you, Ms. Jones. Ms. Lewis. Thank you. So I just want to address just a couple of things really quickly. As far as the the World 28 J letter that was filed, we do concede that the Ferrer case does eliminate any of our tolling that we've alleged. The law has changed. And I actually included that in my brief as well. The Texas state law has changed. The Texas Supreme Court has recently found that the legislation, their statute, 16.063, is void. They nullified it by saying that it didn't apply to defendants who are not residents of Texas that are out of state. That's old. That's been the case for a long time. But recently in Ferrer, the Texas Supreme Court recently ruled and held that that does not apply to Texas residents either who have left the state. The statute actually says that if every day that the defendant is out of state, that it does toll the statute of limitation. That is no longer the case according to Ferrer. So we do concede based on that. And we put the concession in the brief. Further, I want to point one other thing. We did ask the court to reassign the case upon remand. And that is also now a moot issue. And I should have maybe filed a rule between AJ and myself. It's okay. We're aware of that. Pardon me? We're aware of that, that it's moot. Oh, thank you. Okay. I just wanted to point that I am abandoning that as well. And as far as the futility of amending the complaint, in the motion to dismiss, there is on ROA 343, there are some allegations there that we would plead given the opportunity to amend. That was in the response to the motion to dismiss. And it just basically shows the different type of arrest that is allowed in Precinct 7 that has gone forth without probable cause. And it gave some examples of that. And part of the issue with the failure to train on the constitutional limits that we're alleging against, or that we'd like to allege more thoroughly against Harris County and May Walker, is that these officers in Precinct 7 tend to initiate these arrests on their own. And when they initiate the arrest on their own, meaning they're the complaining witness. And so those type of arrests are arrests that allow for constitutional violations to occur. Like in this case, there is a flurry of arrests for interference with public duties, self-initiated arrests. There's evading, resisting, and all these type of arrests that occur that are officer-initiated arrests and are often dismissed without probable cause. And they're using the tool to arrest individuals without probable cause to disrupt a person's, disrupt their day or disrupt their lives because they become upset with a person. And given the opportunity to plea that and flesh out the facts in that as it relates to the training or the failure to supervise as it relates to that, that self-initiated, when I say that, I mean the self-initiated arrest, it would actually allow for us to state a strong, plausible claim for the failure to supervise and failure to train and discipline the officers. Also, I just want to point out really quickly as it relates to the failure to train claim, there were, as I stated, there is on 343, the motion to dismiss, but also in the complaint, there are allegations. And we have to remember that on the front end of these type of cases, we don't get discovery. We don't get a lot of things. We are fishing and looking for names and information. So that's where the does come in and so on as far as not actually knowing the names. So that's another reason that it would not be futile now that we actually have names and we know exactly who these individuals are that would allow for, it would be reasonable to allow for amendment on that basis. And Judge Hughes did not analyze that request for amendment. And in under 15A, I'm certain that the court will find that based on the liberal standard that we've met that, and it was not done for delay. The request is not done for futility purposes. It's not done for, and I apologize, but the standard is the five factors that exist. They have been reached in our case, and we believe that if they were actually applied, then it would allow for amendment. And I thank you all. I yield the rest of my time. Unless anybody has any questions. Thank you, Ms. Lewis. Your case and all of today's cases are under submission, and the court is in recess under the usual order.